Good morning. May it please the Court, Melissa Blackburn Janot for Ronald Stattmuller, Appellant and Chapter 7 Trustee of the Medina Bankruptcy State. I'd like to start with the fact that when it granted summary judgment, the Bankruptcy Court invited review, stating that this is one that might benefit from an appellate court looking at it. And we concur and also believe that the case would benefit from a review and a reversal of the summary judgment at a remand for trial is appropriate. We know this Court has reviewed the facts of the case, which show that in the first summary judgment decided by Judge Taylor, she ruled that the transmutation agreement was a transfer for the purposes of the UVTA. The facts before the Court then and now are that shortly after the estate's $1.5 million judgment was entered, the judgment debtor was examined, testified that there was no pre or post nuptial agreement with his wife of 30 years. 24 days later, the judgment debtor entered into the transmutation agreement, transferred half of his community property assets to his wife. Those assets would have been available to the trustee, but the judgment debtor took the position that as a result of the transmutation agreement, those assets were no longer available to the trustee. Judge Taylor... Can I jump you ahead to what I think is probably the hardest part of your case, the weakest point you've got, and that is the Murtosh decision from the California Court of Appeals. What do you make of that? We believe that the Murtosh decision is not applicable because in that case, Murtosh, the asset that was sought was over-encumbered. Basically, the court's ruling on Murtosh fatality, Bennett, and those cases are that it would be an idle act for the court to set it aside. There's nothing there for the party, and therefore, for that reason, it was distinguishable. It's also distinguishable on appeal because the plaintiff, perhaps recognizing that there was no equity in that property for her, did not claim that she was injured financially. She claimed she was not required to prove injury in Murtosh. So we believe that Murtosh, Fidelity, Bennett, all of the decisions that were actually rendered after trial, and not on summary judgment, the key factor was the transfers in those cases did not put any property that a creditor would have been able to reach beyond the payment of the debt. So that's why we believe those cases are not applicable, and if the court has any further questions on those. I have a question. I have a question, counsel, and that is, do you think there's a distinction under the statute between, let me just start again. There was a transfer here that was clearly done with the intent to take assets out of the reach of the trustee. That was the sole purpose of the transfer that was admitted by Mr. Sarkazian. That's why they entered into the transmutation agreement. Is there a difference under the statute between constructive fraud and fraud with the intent to hinder or delay, and is there a distinction between the requirement for harm or damages or injury under either of those two provisions? Your Honor, that's the crux of the case. The statute, actual versus constructive, there's a significant difference. For intentional fraud, which we believe that the transfer was still must be tried, so putting that aside, for intentional fraud under 3404A1, which is what the summary judgment was brought under, it is intentional fraud, and that's what needs to be shown under all these cases is that a transfer occurred that put an asset out of their reach. Under constructive fraud, and probably because it's a different type of situation, an intent to deceive somebody versus a constructive fraud, the burden is to show that the debtor was insolvent or various other assets, and the crux of this case, frankly, is that the requirements for constructive fraud were put into this intentional fraud case, and that's where we went down that path. And so what was shown in the court, Judge Taylor's memorandum decision of December 4, 2018, found a transfer, specifically talked about the harm and the intent of fraudulent transfer statutes. That's what needed to be shown in this case for intentional fraud case. So hopefully that answers that. There's definitely a significant difference on constructive fraud, and that's not the case we have before us. So just to reiterate, I think Judge Taylor's description of the transmutation agreement made the case that before the transmutation, creditors, including the trustee, had access to all of the appellee's community property, and after they had access only to the half that became the judgment debtor's property. And that's what the trustee needed to show, and we said did show, in the various pleadings. And I think there was one issue raised with Frost v. Watton, talked about that with an actual fraudulent transfer claimant, the claimant doesn't need to prove that there are no remaining assets, and we would say doesn't need to prove the insolvent, doesn't need to prove anything else, because it's immaterial that the debtor doesn't strip himself of the assets when there is actual fraud. And I would say this position was presented first by the appellees in their motion. They specifically said in their summary judgment motion, bringing it under 3439A1, that one of the alternatives for the trustee to prevail was that the transfer put beyond reach an asset that the trustee would have been able to subject to the judgment. That's what happened. The trustee prevails. Can I ask you a question about California law? Because in reviewing the property that was transferred, a number of the items were the transfer of the 50% interest that was whole, appears to have been wholly owned with the spouse. Now prior to that, as community property, wouldn't the judgment creditor be able to recover the entirety of that, including the community interest? Correct, Chairman. And after, when it becomes separate property, and there is a co-owner of separate property, is there a different ability to recover? Well, the fraudulent transfer statutes would apply. That was really the subject of the first memorandum decisions, that you can't really transmute something to separate property without the fraudulent transfer statutes still apply. But the issue of, can a creditor attach separate property or go after separate property? No. And that's why when they tried to make this property from community property to separate property to prevent the trustee from having those assets, that's what the fraudulent transfer was. But isn't that harm? I mean, why isn't that harm if you've taken something that you could get 100% of, which presumably would have more value, and now you can get only 50%, which is co-owned by the spouse. Isn't that harm? That is harm, Your Honor. And that's what the court found in the memorandum decision of December 2018, the first summary judgment. The court specifically found that there was harm by that transfer because it made those assets unavailable. And that's why we assert that that is all the harm that needed to be shown under the intentional fraud. Yes, that's the harm that needed to be shown. All the other extraneous things were not relevant in the intentional fraud case. You're getting close to your five minutes if you want to reserve at this point. If you want mention is, I don't think that, and I'm not sure that it's entirely significant, but Avila was not really, we didn't distinguish it as much as I would have liked. I wanted to say that Avila, because that was the case that basically, I think the court relied on when it said, if you have billions of dollars, then it's not really harm because you can go after the party. And Avila was, out of a 2008 financial crisis, the deed had been transferred. The party who was the obligor on the deed said it was a fraudulent transfer because they were trying to get the deed modified. So they said it was a fraudulent transfer. But he wasn't seeking to execute on the deed of trust. He was seeking monetary damages. So I would just say that Avila was really irrelevant and is not in the context of an intentional fraud case. So, and with that, I will reserve. Thank you. Okay. All right. Thank you very much. Ms. McKellar, please go ahead. Good morning, your honors. May it please the court, Melissa McKellar on behalf of the appellees, John and Bernadette. Your honor's trustee is trying to set aside the transmutation agreement under the UVTA on the grounds that it is a voidable transfer. But the UVTA specifically requires that trustee to prevail, prove the transfer caused the Medina estate specific injury. Let me stop you right there. What language of the UVTA imposes that actual injury requirement that you're talking about? Let me back up a second. I think when we talk about actual injury, what you mean is that the transfer or is left without sufficient assets that could be used to satisfy the judgment without undue burden or expense. Is that what we're talking about with respect to actual injury? Your honor, there's multiple types of actual injury that trustee or that UVTA plaintiff can show to prevail on a UVTA claim. And judge Taylor actually gave trustee a few of those options during oral argument on the summary judgment. So one of those things is yes, that transfer left the transfer with less assets than debt or insolvent per the definition in 3439.02. Okay, so where in the statute is that requirement imposed in an actual intentional fraudulent transfer case? What statutory language do you rely on? Your honor, the UVTA specifically says that a transfer is voidable as to a creditor if the transfer was made with the intent to hinder, delay, or defraud the creditors. Now, the use of the word voidable as opposed to void shows the legislator's intent that something more than just a transfer made without intentions is required to prevail on a UVTA claim. Now, appellant argues that meritash is not applicable because in that case, the asset at issue was over encumbered. The meritash has been applied in many different cases, both California and federal, when the asset transferred actually has value. So for example, in the Avila v. Bank of America case from the Northern District of California and Colby v. Newman from the Central District of California and Berger v. Varum, which is a California appellate case. In Berger, the court noted that consequential damages such as lost rent, damage to credit, lost profits, were actual damages or harm that a creditor could show to prevail on this harm element. In Avila, both Avila and Colby, the plaintiff's complaints were dismissed on a 12b6 motion when they failed to allege that there was any harm. In Avila, the court noted... Why isn't it sufficient harm to say, one day he's got 100% of these assets available to me, the next day only 50%. A 50% interest, which is probably worth less than 50% of the whole, is available to me. Why is that not enough? It's not enough in this case, Your Honor. In another case, it might be. But in this case, when we look at the face of the transmutation agreement, it shows that after the split, John Sarkeesian was left with roughly 3.4 to 3.6 million dollars in assets. Who valued that? The Sarkeesians, or the attorneys, I suppose, that prepared the agreement, put the values on... It was never proven or challenged. Sarkeesians weren't required in summary judgment to put on any evidence to support that. They just could rely upon their own valuation. Yes, Your Honor, because the appellant didn't put any evidence into the record and didn't perform any discovery, that those values were over-inflated. And Rule 56E2 allows the court to take those facts as true if the appellant fails to put any evidence in the record to deceive them. If they have the burden of proof on that issue. But if the issue, as Judge Farris suggested, is simply, you have deprived me of some property irrespective of its value, then they're not required to put the value on. You would be, in defense, suggesting I'm not left with an unusual amount of property that wouldn't be sufficient to satisfy them. And that would be your burden, not theirs. Well, Your Honor, two points in response. First, the Supreme Court in Celotex and the lower court actually adopted this as the standard of review. If the defendant is the party moving for summary judgment, or the party that does not have the burden of proof at trial, it merely has to point to the lack of evidence on plaintiff's case. It does not actually have to submit evidence negating the plaintiff's case. Once the defendant has met that sufficient evidence to show that there is a tribal or a genuine issue of material factors to the element of damages. That's a very good answer. But aren't you really shifting it? Aren't you really saying that the solvency precludes the finding of intent? No, Your Honor, not at all. Don't you recognize that solvency or insolvency is a fundamental badge of fraud in fraudulent intent cases and fraudulent transfer cases such as this? It is, Your Honor. All right. And that's adopted by common law. So I don't know if you, I may have missed it, but as to Judge Ferris's initial question, where is that requirement in the UVTA then? And since you're saying it's not part of the determination of fraudulent intent. I'm sorry, Your Honor, are you asking where is the insolvency requirement found in the UVTA? The actual injury requirement. What is the statutory site to the UVTA that to prove an actual fraudulent transfer, there's an affirmative obligation on the claimant to establish harm? Cite the statutory provision. Your Honor, nowhere in the UVTA does it say you must show harm, but if a fraudulent transfer was per se evidence of harm, damage, or injury, we would expect that the UVTA would say that, and it just doesn't. How do you get, we should probably talk about frost then. Your brief was a little short on frost. Your Honor, the cases that trustee cites in support of this notion that there needs not, that they don't need to prove harm if there's a fraudulent transfer, or I guess if the fraudulent transfer is itself evidence of harm, is not supported by frost, Nassar v. Geary, Reddy v. Gonzalez, or Hager v. Schindler, which are the four cases that appellant cites in support of that notion. In frost specifically, the court said that the plaintiff, once they show that there's fraudulent intent, does not also need to show insolvency because those are two different avenues of relief, and the UVTA says that. 3439.04 says that a transfer may be set aside if it is made with fraudulent intent. 3439.05 says that a transfer may be set aside if it renders the transferor insolvent or that they are insolvent at the time that they make the transfer, and appellees do not argue and do not contend that the appellant needed to show insolvency to prevail on the summary judgment motion. Judge Taylor pointed out, and appellees agree, that that was but one avenue that the appellants could show to show that there was a genuine issue of material fact as to the element of damages. So Judge Taylor said, look, if this transmutation agreement showed that it left John with less assets than the debt, which it didn't, or if it showed that the assets were split in such a way that they left John with the difficult-to-reach assets and Bernadette with the attainable assets, or if you could show me that by nature of this transfer, collectability was hindered, delayed, or made more expensive, then you win. But isn't that exactly the same in substance as an insolvency requirement? No, Your Honor, because the trust, that actually what Judge Taylor said to trustee, and this is on page 819 of the record lines 19 through 22, Judge Taylor said to the trustee, I agree with you that insolvency is not something you have to prove to win, but you have to show me some evidence, some evidence that this hindered, delayed, or harmed collectability, and you haven't shown me anything. And in fact, that's when Judge Taylor gave trustee those multiple examples of harm that he could have shown, some of which have nothing to do with insolvency. So for example, if the agreement had given Bernadette, like I said, all of the cash, easily attainable assets, and left John with the difficult assets, then even though those assets might be more than the amount of the judgment, it still would have caused the trustee harm because it would have cost more to get to those assets. That's not what happened here, and that's actually not what the trustee alleged in the summary judgment. So why hasn't the judgment been paid? Well, Your Honor, just because the judgment is out there doesn't mean that Mr. Sarkeesian has an obligation to pay it. And if trustee... Why hasn't it been collected? Let me ask you that easy. Why hasn't the trustee done it? I don't know, Your Honor. Trustee... The efforts that trustee has made to collect this judgment is not in the record before the court. So how about why make the transfer at all if all you want to do is move on with your lives and not create any problems for the trustee, not cause any harm? Why move the assets away at all? Your Honor, even assuming arguendo that the transfer was made with fraudulent intent, that still doesn't mean that the trustee was harmed. The day that this transfer was made... I'm just not buying that. Once you take the assets away, you're now saying you're not harmed because look what you have left to collect with that we value, that it's shown your burden to prove that it isn't sufficient, that you have to go through the collection process in order to establish any injury. That's ridiculous. That is ridiculous. I mean, I appreciate what you're saying, but I don't see how that's not harm. Otherwise, they put them back and let the trustee collect and then go on with their lives, right? Your Honor, that would be really rewriting the UBTA to say that any time there's a fraudulent transfer, there's per se evidence of harm and that's simply not the law. Veritas, Avila, Colby, Bennett, there's multiple cases out there that say that actual injury is an element of the UBTA. Injury is required for standing. How can a plaintiff or why would a plaintiff bring a claim if the action didn't actually harm them? Do any of those cases say that insolvency is one way of showing injury or the only way of showing injury? No, Your Honor. The cases say that insolvency is a separate avenue for relief, but it is a badge of fraud, and that's actually in the revised UBTA. But again, Judge Taylor- You'll get a badge of fraud, though, when you have an actual intentional transfer. That's- We're not at the issue of intent here. That hasn't been decided yet, Your Honor. Correct, Your Honor. 3439.04 says, obviously, like we've gone over, the UBTA, or I'm sorry, a transfer made with this requisite intent may be set aside. And in order to determine whether or not that intent was present, the statute gives the court and the jury 11 different badges of fraud they can consider, one of those being insolvency. But 3439.05 says that a transfer may be set aside if it was made at the time that the transfer was insolvent or that the transfer left insolvent. But, Your Honors, this motion was not granted because appellant could not prove that First, the trustee has the burden of proof at trial to prove that the transfer injured the estate. Second, at the time that the summary judgment motion was heard, the only evidence Judge Hayler had before her was the transmutation agreement, which shows that the couple's assets were split directly down the middle, leaving each couple with one half and leaving John with $3.4 million, which was double the amount of the judgment at the time. And third, discovery had closed. Trustee at that point had all the evidence he was going to have to prove that this transfer harmed his client. And in opposition to the motion for summary judgment, the trustee did not identify any specific injury to the estate. The only thing that trustee said was that trustee does contend and can prove that this transfer financially injured the estate. That nonspecific response was patently insufficient to overcome summary judgment, and the lower court correctly granted summary judgment in favor of the appellants. Thank you. Okay. Thank you very much. Ms. Blackburn, as you know, you have a couple of minutes left. I'm sorry, four and a half minutes. Pardon me. Go ahead. Okay. Well, I think that courts have pinpointed the exact issue. And I just, as a summary, I'd say there is a difference between or intentional fraud and constructive fraud. And in intentional fraud, the trustee has shown what he needed to show that there was harm to the estate. And Judge Taylor's decision of 2018 found that. I would also note that there was evidence that the trustee, besides the transmutation agreement, which was before the court, the court's decision finding that there was harm because assets were transferred away, there was also the deposition that was entered into when the trustee learned about the transmutation agreement. And the testimony was, yes, before there was 100%, and now you only get 50%. And that was the Fitzgerald declaration that was evidenced before the court. It was part of the summary judgment. So it's not I would say also the Colby case was cited by the court the day before just to distinguish it. That case is distinguishable because they alleged they suffered damages, but they didn't say that the transfer prevented them from collecting the property to enforce it. So the Colby case is they each say that it would be sufficient to find that a transfer made an asset unavailable to the creditor. They all say that that's what Frost says, and Frost is integral. Frost is the position that the trustee has been the position of the trustee that under intentional act, you only need to show that the transfer property that would have been available. But in Murtash and all those other cases, not only did they reiterate that, but they turned on the fact that it was an idle act because the property had no value. In this case, there is value in the property. And so the trustee was harmed by this transfer of 50%. I hope I've addressed the outstanding issues. If there are any other ones, I would try to if there's anything else that the court... Any other questions from the panel? No, I don't have anything. Okay. No, we don't have any other questions. So if you want to conclude, that's fine with us. Okay. Okay. The trustee showed what he needed to show in this case, in an intentional fraud case. He showed harm that was established by the memorandum decision. Intent is an issue that will be tried. And so we would simply request that the court reverse the decision and remand it back to the bankruptcy court for trial. Okay. All right. Thank you very much, both of you. These are excellent oral arguments. We appreciate it and the matter is submitted. Thank you. Thank you, Your Honors.
judges: Faris, Spraker, Gan